## ATTACHMENT C

## FACTUAL SUMMARY OF PLAINTIFF'S CAUSE OF ACTION

### The Incident

On April 25, 2022, Plaintiff was traveling Northbound on I-75 in Cobb County, Georgia. At the same time, Defendant Harold Arthur Lake was operating a tractor-trailer, on behalf of Rosedale Transport Limited, and traveling directly behind Plaintiff's vehicle on 1-75 Northbound. Defendant Lake negligently failed to keep a proper lookout, followed too closely, and collided with the rear of Plaintiff's vehicle. Police were called, Defendant Lake was cited for following too closely pursuant to O.C.G.A. § 40-6-49, and Plaintiff Traylor was transported by Metro Atlanta Ambulance to Wellstar Kennestone Hospital.



## Summary of Plaintiff's Claim Against Defendants Harold Arthur Lake and Rosedale Transport Limited

As Plaintiff traveled northbound on I-75, Defendant Lake failed to keep a proper lookout, followed too closely, and collided with the rear of Plaintiff's vehicle.

At all relevant times, Defendant Rosedale Transport Limited's employee, Harold Arthur Lake, owed certain civil duties to Plaintiff, including the duty to exercise reasonable care.  Notwithstanding those duties, Defendants violated them in the following particulars, including but not limited to:

  A) failing to keep a proper lookout; to maintain a safe following distance;

  B) failing to operate his vehicle at safe speed based on conditions present; to pay attention and avoid driver distractions at all times;

  C) failing to not follow other vehicles too closely; to take proper evasive action when necessary;

  D) failing to properly control his vehicle; and

  E) failing to drive and operate his vehicle in a safe and reasonable manner..

At all relevant times, Defendant Harold Arthur Lake operated the subject tractor trailer under the authority granted to Defendant Rosedale Transport Limited. Defendant Harold Arthur Lake was an agent and/or an employee of Defendant Rosedale Transport Limited, at all times material.  Defendant Harold Arthur Lake was operating a 2017 International Tractor-Trailer within the course and scope of his

agency and/or employment with Defendant Rosedale Transport Limited at the time of the subject collision.

As Defendant Harold Arthur Lake was operating under the authority granted to, and within the scope of his employment and/or agency with Defendant Rosedale Transport Limited, a motor carrier, at the time of the subject collision, Defendant Rosedale Transport Limited is liable to Plaintiff for the negligent acts and omissions of Defendant Harold Arthur Lake under the theory of *respondeat superior* and agency principles.

Accordingly, Plaintiff is entitled to recover compensatory damages from Defendants in an amount to be determined by a jury.

### Plaintiff's Injuries

Ms. Raye Traylor was evaluated by Paramedics/EMS at the scene for back pain and dizziness and transported by Metro Atlanta Ambulance to Wellstar Kennestone Hospital from the scene of the collision on April 25, 2022. She presented with back pain, neck pain, and dizziness. Plaintiff underwent a lumbar spine x-ray, which did not indicate any acute abnormality or injury. The examination revealed a strain of the lumbar region and cervicalgia, and Plaintiff was discharged to home with prescriptions for Robaxin and Motrin and instructed to follow-up with her primary care provider (PCP) and orthopedic surgery.

On May 2, 2022, Plaintiff presented to her primary care doctor, reporting continued upper and lower back pain since the MVC about a week ago. She was given anti-inflammatories and muscle relaxers in the ED and has been taking the medications with no relief. She also reports stiffness of the lower back. She was started on Tramadol as needed for pain and referred to physical therapy (PT) for evaluation and treatment. She began treatment with Dr. Benjamin Von Schuch at Benchmark Physical Therapy for low back pain, radiculopathy into bilateral legs, neck and shoulders, with right arm radiculopathy on June 1, 2022. She treated with Benchmark through October of 2024.

While treating with Benchmark Physical Therapy, using a TENS unit, as well as following up with her primary care physician, Plaintiff sought treatment with Dr. Scott Masson at Alliance Spine on and Pain on August 18, 2022 for her neck and low back injuries, reporting radiating pain down her bilateral upper extremities and radiating pain to her bilateral lower extremities with tingling, weakness and numbness. Plaintiff underwent MRIs of the lumbar and cervical spine with American Health Imaging and Elite Radiology. At L5-S1 there is a right-sided herniated disc with compression of the thecal sac, neural foramen and right S1 nerve root. At C5-C6 there is disc herniation. There is a central herniated disc with compromise of the thecal sac, spinal cord and nerve roots bilaterally. On September 13, 22, Alliance Spine and Pain recommended a cervical epidural steroid injection at C7-T1. On

October 26, 2022, Alliance Spine and Pain recommended a right transforaminal ESI at L5-S1.

Plaintiff also treated for her head injury with Amara Onuorah at LifeStance Health/Life Stance Counseling, beginning in September of 2022 due to anxiety, depressive thoughts, nightmares, fear of cars and trucks, and issue with sleep since the collision, as well as with United Neurology, LLC.

Plaintiff presented to Dr. Anantha Kamath/Pain Management at Center for Spine Interventions for second opinion and follow ups to address her neck and low back pain. A surgical evaluation was ordered and may consider trial of right C7-T1 interlaminar cervical ESI if no surgery is recommended and no relief with PT and medications. Moreover, a surgical evaluation was ordered and may consider trial of right L5-S1 and S1 ML transforaminal lumbar ESI if no surgery is recommended and no relief with PT and medications. She was referred to PT and to follow-up.

Plaintiff began treating with Dr. Daniel Moore at Craniospinal Institute of Georgia on May 17, 2023, and her treatment is ongoing. Ms. Traylor underwent multiple Cervical Epidural Steroid Injections to manage her pain and prescribed numerous medications. Dr. Moore recommended additional MRIs of her lumbar and cervical spine prior to any surgical evaluation and also recommended a brain MRI given her complaints. Plaintiff presented to Elite Radiology to undergo the MRIs to her lumbar, cervical and brain:

- There is a reversal of the normal lordotic curvature of the cervical spine, which may indicate an injury.
- At C3-4, a 2 mm disc bulge is identified, causing moderate right and mild left neural foraminal stenosis.
- At C4-5, a 1 mm disc bulge is noted, with moderate left and mild right neural foraminal stenosis.
- At C5-6, there is a 3 mm disc bulge with moderate spinal canal stenosis (7 mm) and mild anterior cord deformity, along with severe left neural foraminal stenosis.
- At C6-7, a 2 mm disc bulge is present, leading to mild spinal canal stenosis (1 cm).
- There is decreased intervertebral disc signal and height at C5-6 and C6-7.
- At L5-S1, a right paracentral disc herniation is superimposed on a disc bulge, both measuring 3 mm, leading to moderate spinal canal stenosis (7 mm) and mild-to-moderate bilateral neural foraminal stenosis.
- There is decreased intervertebral disc signal at L5-S1.
- Brain MRI: There are a few scattered white matter predominantly subcortical hyperintensities on T2 and/or FLAIR weighted imaging which are nonspecific. Given Ms. Traylor's history, the differential diagnosis includes trauma/traumatic brain injury (TBI), as well as other etiologies such as vasculitis and migraine headache which should be ruled out clinically.

Dr. Moore recommended surgical intervention based on MRI findings and the patient's ongoing symptoms post-injection and physical therapy, specifically, an anterior cervical discectomy and fusion (ACDF) at C5-C6 and lumbar discectomy at L5-S1 if conservative treatments fail.

**Surgical estimate:**

- Because of ongoing back and right leg pain, a right-sided lumbar discectomy at L5-S1 as indicated. The typical professional fee is approximately $7000 with, from my experience, a facility fee, typically between $15,000 and $30,000.
- Because of pain in the upper extremities specifically on the right as well as cervical stenosis, an anterior cervical discectomy and fusion at C5-C6 is indicated. The professional fee is approximately $20,000 with, from my experience, a facility fee of between $50,000 and $75,000.

Plaintiff is also treating with Pickens County Chiropractic to continue conservative care. Plaintiff will continue to incur additional medical expenses as her treatment is ongoing. As a result of the subject collision and Defendants' negligence, Plaintiff has incurred past medical expenses of approximately $78,779.68. *See* O.C.G.A. § 51-12-7 and *Georgia Suggested Pattern Jury Instructions*, Vol. I: Civil Cases, § 66.040 (ed. 2024).

| **Provider** | **Cost of Care** |
|---|---|
| Craniospinal Institute of Georgia | $40,032.08 |
| Wellstar Kennestone Hospital | $2,980.60 |
| Center for Spine Interventions | $2,095.00 |
| Metro Atlanta Ambulance | $1,399.50 |
| BenchMark Physical Therapy | $9,211.50 |
| American Health Imaging | $4,595.00 |
| The Bortolazzo Group | $935.00 |
| Windermere Medical Group | $668.00 |
| LifeStance Health Georgia | $1,235.00 |
| Elite Radiology of Georgia | $8,950.00 |
| Alliance Spine and Pain Centers | $1,169.00 |
| Pickens County Chiropractic Center | $1,285.00 |
| United Neurology, LLC | $4,224.00 |
| **Total** | **$78,779.68** |

**Plaintiff's General Damages (Past and Future)**

Plaintiff is also entitled to recover general damages, which includes past and future pain and suffering. See O.C.G.A. § 51-12-2(a). Recovery for pain and suffering includes compensation for (1) interference with normal living; (2) interference with enjoyment of life; (3) loss of capacity to labor and earn money; (4) fear of extent of injury; (5) shock of impact; (6) actual pain and suffering; (7) mental anguish; and the (8) the extent to which Plaintiff must limit his activities. See Food Lion v. Williams, 219 Ga.App.352 (1995). "Pain and suffering is a legal item of damages. The measure is the enlightened conscience of fair and impartial jurors." See Georgia Suggested Pattern Jury Instructions, Volume 1: Civil Cases, Fifth Edition, January 2025 at Section 66.501 citing Redd v Peters, 100 Ga.App. 316 (1959); Western, etc. Railroad Co. v. Young, 83 Ga. 512, 515 (1889).

Plaintiff's counsel is aware of the Court's requirement for Plaintiff to list in this Pretrial Order the amount of each type of damage they are seeking. General damages by their nature do not lend themselves to a specific valuation especially without having the benefit of seeing how the evidence will be presented at trial. The value of general damages is determined by the enlightened conscience of a jury. Therefore, general damages are unlike special damages, which are more certain and defined. Plaintiff's counsel will not decide what specific amount of general damages they will

ask for until the case is fully presented to the jury. Plaintiff's counsel will decide a specific amount to request based on how the evidence is presented and received at trial. In order to comply with the Court's requirement about listing an amount for each type of damage sought, Plaintiff anticipates requesting general damages in the range of $1,000,000 - $1,500,000 for Plaintiff. Plaintiff objects to any disclosure to the jury of this portion of the Pre-Trial Order and what ranges Plaintiff anticipate requesting for general damages.

## Plaintiff's Statement of Relevant Rules, Regulations, Statutes, Ordinances and Illustrative Case Law

In order to state a cause of action for negligence under Georgia law, a Plaintiff must establish that there is: (1) a legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty. Galanti v. United States of America, 709 F.2d 706 (11th Cir. 1983) (*citing* Bradley Center v. Wessner, 250 Ga. 199, 200 (1982)).